NASH-KELVINATOR CORPORATION, Respondent, vs. WISCON-
SIN EMPLOYMENT RELATIONS BOARD, Defendant:
UNITED AUTOMOBILE WORKERS OF AMERICA, C. I. O.,
LOCAL No. 72, Appellant.

*May 16—June .15, 1945.*

For the defendant Wisconsin Employment Relations Board there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

*Max Raskin* of Milwaukee, for the appellant United Automobile Workers of America, C. I. O., Local No. 72.

For the respondent there was a brief by *Cook, Smith, Jacobs & Beake* and *Glen R. Miller,* all of Detroit, Michigan, general counsel, and *H. J. Mellum* of Kenosha, Wisconsin general counsel, and oral argument by *Mr. Miller* and *Mr. Mellum.*

FOWLER, J.   Local 72 is a labor union comprised of certain employees of the Nash-Kelvinator Corporation working in its Kenosha plant, and it filed with the Wisconsin Employment Relations Board a complaint that the company was guilty of an unfair labor practice in refusing to recognize it as the bargaining agent of its members.   The board found the company so guilty and made an order requiring the company to cease and desist from refusing so to recognize the Local and to take the affirmative action of immediately recognizing that right.   The company brought court action to review the order of the board and the board cross-petitioned for its enforcement.   The court entered judgment modifying the board's

finding and order and denying the board's petition for enforcement. Local 72 appeals.

A contract exists between Local 72 and the company that forms the basis of the Local's claim. The Local claims that the refusal of the company to recognize it as the bargaining agent of its members was a violation of that contract, and that such violation was an unfair labor practice. The company concedes that if its refusal did violate the contract, such violation was an unfair labor practice, and that the board had jurisdiction to determine whether it did.

The provision of the contract involved is as follows:

"Article I, section 1: The company hereby recognizes the International Union, United Automobile Workers of America, Local 72, affiliated with the Congress of Industrial Organizations, as the exclusive bargaining agency for the purpose of collective bargaining upon all matters pertaining to wages, hours, seniority, safety, health regulations and other conditions of employment for all factory employees employed in the divisions and departments listed in article IV, section 3, rule 5 of this agreement, . . . excluding however, all employees working on costs, scheduling or control of production or in any supervisory capacity. In order to promote a harmonious relationship between the employees and the company it is important that the employees who are members of the union remain in good standing. Assistant foremen on hourly rate who do production work shall not be considered as working in a supervisory capacity."

Reduced to the portions governing the instant case the provision provides that the company shall recognize Local 72 as the exclusive bargaining agency for the purpose of collective bargaining for all employees of the company in departments 1838 (9) and 865 at its plant in Kenosha, excluding, however, "all employees working on costs, scheduling or control of production or in any supervisory capacity."

Local 72 is composed of metallurgists who work in department 1838 (9) and laboratory employees who work in department 865.

The company refused to recognize Local 72 as the bargaining agent of its members because, as the company claimed, its members worked "on control of production." That is its claim here, was its claim before the board and before the trial court, and it here makes and made before the board or court no other claim.

It seems clear to us that this claim cannot be sustained. It is undisputed that the only work of the metallurgists and laboratory employees is to test the materials received by the company for inclusion in its products to determine whether they come up to the standard required by the company for inclusion in those products. This has nothing to do with "control of production." The phrase "control of production" should be given the meaning that the words when used in connection with the manufacturing of a product reasonably cover and imply. In such connection the words manifestly cover and imply controlling what products shall be produced, the quantity thereof, when the plant shall be in operation to produce such products, and what standard of quality the materials used shall meet. The members of Local 72 control none of these things. They neither determine nor control what shall be produced, when it shall be produced, nor what quantity shall be produced, nor do they fix the standard of the quality of the materials used. They neither control the starting nor stopping, nor the rate of production. The words "control of production" mean just what they imply, just as "scheduling" and "costs" in the excepting clause mean just what they imply. The metallurgists and laboratory employees are no more engaged in "control of production" than is a workman who rejects a crooked nail, a screw, or bolt with a defective head or thread or a defective board from use in a product he is working on. The decision of the board was manifestly correct.

The determination of the board was in accord with the view above expressed. It found as ultimate fact that "[The] metallurgists and laboratory employees . . . are not working on work directly relating to and concerned with the control

of production in . . . [the company's plants] and . . . that the refusal of . . . [the company] to recognize . . . [Local 72] as the bargaining agent for the . . . [metallurgists and laboratory employees] was in violation of the terms of the collective-bargaining agreement;" and it determined as conclusion of law "that by the violation of the terms of the collective-bargaining agreement . . . [the company] has committed an unfair labor practice." The trial court by its judgment struck from the board's findings and conclusions the findings and conclusion above quoted and substituted therefor the finding that "the metallurgists and laboratory employees . . . are working on work directly relating to and concerned with the control of production" and the conclusion of law "that the metallurgists and laboratory employees . . . are excluded from the bargaining agreement."

The court concluded that independent of the agreement Local 72 was entitled to act as the bargaining agent of the metallurgists and laboratory employees and that by refusing to bargain collectively with the Local as such agent the company committed an unfair labor practice, thus in effect affirming the board in this regard, but the stricken portions of the board's findings and conclusions being correct, the court erroneously struck them from the board's findings and erroneously substituted its own findings above quoted therefor. The court incorporated in its judgment its independent conclusion above stated. This should not have been done as the findings of the board supported its order. The court's judgment should merely have affirmed the board's order.

The concluding paragraph of the court's judgment adjudged "that the petition of the . . . [board] for enforcement of said order heretofore entered by it and herein modified by the court be and the same is hereby denied as premature without prejudice to the filing of a further petition in the event that said order shall not be obeyed."

We consider that the addition of this paragraph was erroneous. It is true, as reasoned by the trial judge, that until someone has disobeyed an order of the board there is no immediate occasion for the board to apply to the court for its enforcement. If no proceeding is brought by any person aggrieved by an order for a review of it by the court, there is then no proceeding in the court wherein the board may apply for its enforcement. The board must then under sec. 111.07 (7), Stats., file its petition for enforcement and thereby commence an action in the circuit court, just as a person aggrieved by an order may under sec. 111.07 (8) file a petition for review and thereby commence an action. But when the action is already in court upon petition for review, there is then no need for the board to commence a new action for enforcement of its order, but it may petition for it in the action already pending, and merely move for enforcement by petition filed at the foot of the judgment. In such case it is proper to petition for enforcement with the filing of its return to the petition for review, which return is precisely the same as the record required to be filed on the board's petitioning for enforcement. This was done in the instant case. Instead of "denying" the petition for enforcement as premature, the court should have directed obedience of the order and provided for its enforcement upon the court's being informed of "failure or neglect to obey" it. Why have a separate action brought to secure relief when relief may be had in an action already in court? The practice of filing a cross petition adopted by the board herein has prevailed ever since the enactment of the present act, and was followed by the preceding Wisconsin Labor Relations Board under the preceding Labor Relations Act.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.